IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
- WHEELING DIVISION -

LEXINGTON INSURANCE COMPANY,
    Plaintiff,

v.
                                      Civil Action No.: 1:06CV21
                                      (Judge Frederick P. Stamp, Jr.)

THRASHER ENGINEERING, INC.,
    Defendant.

MEMORANDUM IN SUPPORT OF
MOTION FOR PERMANENT INJUNCTION

## I.    INTRODUCTION

Plaintiff Lexington Insurance Co. ("Lexington") respectfully submits this Memorandum in Support of Motion for Permanent Injunction.  Lexington requires injunctive relief from this Court because Lexington is being required to defend the exact same claim in state court that was determined by this Court.  Lexington therefore brings this Motion for Permanent Injunction pursuant to 28 U.S.C. § 1651 in order to preserve the integrity of this Court's final judgment and to protect Lexington from an inconsistent judgment in state court.

## II.    STATEMENT OF THE CASE

The underlying case arises from the construction of a vacuum sewer system that was designed by Thrasher Engineering Co. ("Thrasher").  In 2004, a case was filed on behalf of six people acting as representatives of a class ("Class Plaintiffs") against Thrasher.  In Class Plaintiffs' Amended Complaint, which was filed in 2005, they sought declaratory judgment against Lexington that Thrasher was covered under an excess professional liability insurance policy issued by Lexington.  Class Plaintiffs' Amended

Complaint makes clear that the declaratory relief sought by them in the state court action is derivative of Thrasher's rights and is premised solely and exclusively on an interpretation of the plain language of the Lexington Policy issued to Thrasher:

> . . . the plaintiff class prays for a declaratory judgment determining the insurance coverages of Thrasher Engineering and Green River, a determination of said coverages policy periods, which appear to have been in full force for each year from 1999 through the present, a determination that said coverages are applicable to the claims of the Plaintiff class, a determination of the number of claims made and occurrences triggering coverage under the applicable policies, and a determination of the amount of coverage available for Thrasher Engineering and Green River from each defendant insurer.

*See* Am. Compl., ¶ 126 (Ex. A).

Pursuant to a binding arbitration clause in Lexington's policy, Lexington served the Class Plaintiffs and Thrasher with a demand for arbitration. *See* Lexington Policy, Condition R. Arbitration, p.11 (Ex. B). The Class Plaintiffs declined to participate. *See* Ex. C. Lexington and Thrasher proceeded with the arbitration, as they were contractually obligated to do. In January 2006, the arbitration panel issued a lengthy award, concluding that because Thrasher had knowledge of the circumstances giving rise to Class Plaintiffs' claims prior to the effective date of Lexington's policy, the underlying claims fell outside the scope of, or were excluded from, coverage. *See* Award of Arbitrator (Ex. D).

Not only did the arbitration panel determine Thrasher's rights to coverage under the Lexington Policy, it also assumed jurisdiction over Class Plaintiffs and resolved Class Plaintiffs' claims. The Panel found that Class Plaintiffs' claims were derivative of Thrasher's rights under the Policy and that the Class Plaintiffs were bound as a matter of equity by any decision rendered as between Thrasher and Lexington:

> As the Class Plaintiffs are not insureds or additional insureds under the Lexington policy, their rights against Lexington derive from their claims against Lexington's policy holder, [Thrasher]. Accordingly, insofar as they seek to enforce the benefits of the Lexington policy to satisfy claims that they may have against [Thrasher], their claims are no greater or less than those enjoyed by [Thrasher] and they must be subject to the same policy terms, conditions, and requirements as is the case with [Thrasher]. Insofar as [Thrasher] is bound by the terms of the Lexington policy to resolve all disputes concerning the interpretation of the policy to binding arbitration, so too are the Class Plaintiffs subject to this requirement where they seek benefits directly from the [Thrasher] contract.

Award of Arbitrator, p. 6. The arbitrators further noted that "the Class Plaintiffs were provided the opportunity to participate in this arbitration but chose not to do so" and thus "it is the opinion and conclusion of this Panel that they should be bound by these findings to the same extent as if they had appeared and fully participated." Award of Arbitrator, p. 7. "[A]s a matter of equity, it is [the Panel's] determination that this finding is binding upon all parties who seek to recover for these claims under the Lexington policy, even if they voluntarily choose to absent themselves from this arbitration process." Award of Arbitrator, p. 7.

On February 27, 2006, this Court confirmed and incorporated into a judgment against Thrasher the Award of Arbitrator. *See* Agreed J. Order (Ex. E).

On February 9, 2007, the circuit court denied Lexington's original motion for summary judgment. *See* Am. Order entered Feb. 9, 2007 (Ex. F). The circuit court held that Class Plaintiffs were not bound by the federal court judgment, because Class Plaintiffs lacked privity and did not have a fair opportunity to litigate their claims to established res judicata or collateral estoppel. On November 15, 2007, the circuit court denied Lexington's successive motion for summary judgment and granted Class

Plaintiffs' motion for summary judgment, finding that Lexington was estopped from denying coverage under Thrasher's policy. *See* Order entered Nov. 15, 2007 (Ex. G).

All the claims against Thrasher remain in the state circuit court, but are limited to collection against Lexington, as well as a bad faith claim against Lexington. *See* Am. Compl.; Order Giving Final Approval to Class Action Settlement. (Ex. H).

## III.    DISCUSSION

Lexington respectfully requests that a permanent injunction be entered in favor of Lexington enjoining Class Plaintiffs from pursuing any claims against Lexington in state court in order to protect this Court's jurisdiction and to protect Lexington from inconsistent judgments as to a claim on which it has already prevailed. This Court incorporated the findings and conclusions of the arbitration award between Lexington and Thrasher in its order dated February 27, 2006. In the Award of Arbitrator, the arbitrators dedicated almost two full, single spaced pages to addressing the application of its findings to Class Plaintiffs. The arbitrators found that the award did bind the Class Plaintiffs.

First, under West Virginia law non-signators to an arbitration agreement can be forced to pursue claims through arbitration when the non-signator pursues a claim directly against an insurance company. *State ex rel. United Asphalt Suppliers, Inc. v. Sanders*, 204 W. Va. 23, 511 S.E.2d 134 (1998). Second, since Class Plaintiffs' rights against Lexington derive from their claims against Thrasher, Class Plaintiffs have no greater or lesser rights than Thrasher and must be subject to the same policy terms, conditions, and requirements as Thrasher. Moreover, it would be inequitable to permit Class Plaintiffs to seek a direct benefit under the insurance policy, but allow them to

avoid the express terms and conditions of that policy.  *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411, 418 (4th Cir. 2000).

Class Plaintiffs have no independent state law, common law, contractual or other substantive claim which would allow them to continue to maintain their declaratory judgment action against Lexington, and their claims should be dismissed on grounds of res judicata, collateral estoppel and equitable estoppel.  The Class Plaintiffs' continued efforts to pursue a declaratory judgment against Lexington and the continued exercise of jurisdiction by the West Virginia state court over this litigation are a direct challenge to this Court's jurisdiction and are inconsistent with the final judgment entered by this Court.

### A.    The All Writs Act

Pursuant to the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Although the language of the statute refers simply to writs issued in aid of jurisdiction, "'where an injunction is proper in order to protect or effectuate the judgments of a federal court, it is within that court's power to issue the injunction under the All Writs Act.'"  *United States v. Cohen*, 152 F.3d 321, 325 (4th Cir. 1998) (quoting *Ward v. Pa. N.Y. Cent. Transp. Co.*, 456 F.2d 1046, 1048 (2d Cir. 1972)).  Thus, the Fourth Circuit has held that "[t]he All Writs Act empowers a federal court to enjoin parties before it from attempting to relitigate decided issues and to prevent collateral attack of its judgments."  *In re March*, 988 F.2d 498, 500 (4th Cir. 1993) (citations omitted).  As detailed below, such an injunction is warranted in this case because this Court has already entered a final

judgment on the issue of coverage between Lexington and Thrasher, and the continuation of the state court action against Lexington on this same issue violates basic principles of res judicata and collateral estoppel.

**B.     The Anti-Injunction Act and the Relitigation Exception**

When a state court improperly exercises jurisdiction or otherwise ignores a federal court judgment, injunctive relief is appropriate. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988); *In re Am. Honda Co. Dealerships Relations Litig.*, 315 F.3d 417, 439 (4th Cir. 2003). The Anti-Injunction Act provides that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Act prohibits enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions. *Atl. Coast Line R.R. v. Locomotive Eng'rs*, 398 U.S. 281, 286-287 (1970). S*ee also Bluefield Cmty. Hosp., Inc. v. Anziulewicz*, 737 F.2d 405, 408 (4th Cir. 1984). "The exceptions are construed narrowly, however, and are 'not [to] be enlarged by loose statutory construction.'" *Employers Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1130 (4th Cir. 1995) (quoting *Atlantic Coast Line*, 398 U.S. at 287)). Moreover, the Act "cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding" rather than directly on the state court. *Atl. Coast Line*, 398 U.S. at 287.

The relitigation exception permits a federal court "to enjoin state court proceedings in order to protect the res judicata effects of federal judgments." *Nationwide Mut. Ins. Co. v. Burke*, 897 F.2d 734, 737 (4th Cir. 1990). It applies not only when the

federal judgment operates as res judicata, but when collateral estoppel applies as well. *Id.* The relitigation exception rests on the policy that "federal courts should not be forced to rely on state court application of res judicata or estoppel principles to protect federal court judgments and decrees." *Thomas v. Powell*, 247 F.3d 260, 262 (D.C. Cir. 2001). For an injunction to issue under the relitigation exception, the claims or issues subject to the injunction must have been actually decided before the federal court. *In re Am. Honda*, 315 F.3d at 440; *Burke*, 897 F.2d at 737. Thus, a "strong and unequivocal showing" of relitigation of the same claim or issue must be made to invoke the relitigation exception. *Id.* (citation omitted). As discussed below, in meeting the standards for res judicata and collateral estoppel, the same claim or issue has been decided by this Court in the prior action, namely, whether Lexington's insurance policy covers the claims asserted by Class Plaintiffs against Thrasher.

### 1.   Positive Authority to Enjoin

While the relitigation exception to the Anti-Injunction Act provides an avenue around the Act's otherwise absolute prohibition, a federal court must also possess positive authority to enjoin state court proceedings. *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1019-20 (8th Cir. 2002). The All Writs Act provides that authority by empowering a federal court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). *See also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 143 (3d Cir. 1998) ("[i]f an injunction falls within one of [the exceptions of the Anti-Injunction Act], the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings"). The Act enables a federal court to

"issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Pa. Bureau of Corr. v. U. S. Marshals Serv.*, 474 U.S. 34, 40 (1985); *In re Am. Honda Motor Co.*, 315 F.3d 417, 437 (4th Cir. 2003).[1]

## 2.  Jurisdiction Is Vested In This Court

"The burden of proving subject matter jurisdiction on a motion to dismiss is on . . . the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).[2] "It is well-settled that a federal court may exercise ancillary jurisdiction to enforce its judgments." *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 752 (4th Cir. 2003). Ancillary jurisdiction "may extend to claims having a factual and logical dependence on the primary lawsuit, . . . but that primary lawsuit must contain an independent basis for

---

[1] An injunction issued pursuant to the authority granted by the All Writs Act "is not subject to the four-factor balancing test ordinarily applicable to preliminary injunctions." *Scardelletti v. Rinckwitz*, 68 Fed. Appx. 472, 477 n.3 (4th Cir. 2003) (unpub.). S*ee also In re Am. Honda*, 315 F.3d at 442 (finding no abuse of discretion even though district court did not consider traditional four-prong analysis before issuing injunction under All Writs Act); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) (stating that to obtain an All Writs Act injunction, a party "must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior"); *Harris v. Wells*, 764 F. Supp. 743, 745 (D. Conn. 1991) (stating that availability of an All Writs Act injunction is determined by the standards under the Act and not by the traditional standards for injunctive relief). An injunction under the All Writs Act, however, should comply with the requirements of Federal Rule of Civil Procedure 65. *Scardelletti v. Debarr*, 265 F.3d 195, 212 (4th Cir. 2001), *rev'd on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002). Specifically, the order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d).

[2] The All Writs Act does not independently confer subject matter jurisdiction on federal courts. *In re Am. Honda*, 315 F.3d at 437 (citing *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002)). Nor does qualifying for an exception to the Anti-Injunction Act fulfill any jurisdictional requirement. *See Smith v. Apple*, 264 U.S. 274, 278 (1024).

federal jurisdiction." *Id.* at 752.  In *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994), the Supreme Court recognized that one of the purposes of exercising ancillary jurisdiction in the past was "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  As the Supreme Court stated in *Local Loan Co. v. Hunt*, 292 U.S. 234 (1934):

> That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled.  And this, irrespective of whether the court would have jurisdiction if the proceedings were an original one.  The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause.

The exercise of such jurisdiction is appropriate where "the effect of an action filed in state court would 'effectively nullif[y]' the judgment of a prior federal action.  This is true even where the federal district court would not have jurisdiction over the second action if it had been brought as an original suit."  *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1292 (5th Cir. 1992).  S*ee Hunt*, 292 U.S. at 239.  S*ee also* 17 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4226 (2d ed. 1988) (stating that, in the context of the relitigation exception, the jurisdiction that the federal court had when it entered its original judgment is enough to support issuance of an injunction).

Based on the above case law, this Court has jurisdiction to hear Lexington's Motion for Permanent Injunction as long as jurisdiction properly existed in the original action pursuant to which the Court entered its final judgment.  This Court had proper jurisdiction to enter the agreed judgment order under 28 U.S.C. § 1332(a), because Lexington and Thrasher are citizens of different states and the amount in controversy,

exclusive of interest and costs, exceeded $75,000.00.  *See* Compl.  Seeking Confirmation

of Arbitration Award, ¶¶ 1-4.

There is no question that Lexington's motion for permanent injunction is factually

and logically dependent upon the suit brought by the Class Plaintiffs against Lexington.

Moreover, if the Class Plaintiffs succeed in their state court action, it would "effectively

nullif[y]" this Court's prior judgment.  Thus, the jurisdiction properly exercised by this

Court as an initial matter, culminating in its entry of final judgment, endures in order to

allow the Court to "secure or preserve the fruits and advantages" of its judgment from

being "effectively nullif[ied]" by plaintiff's continuation of this litigation in state court.

### 3.     Other Courts Have Exercised Jurisdiction Under the All Writs Act Enjoin State Proceedings

An example of the use of the All Writs Act in this manner is seen in *Bryan v.*

*BellSouth Communications, Inc.*, 492 F.3d 231 (4th Cir. 2007).  Tomi Bryan filed a

putative class action against BellSouth in North Carolina state court for excessive charges

under the Federal Universal Service Charge and violation of North Carolina's Unfair

Trade Practices Act.  BellSouth removed to federal court, where the district court

dismissed three of the claims and declined to exercise supplemental jurisdiction on the

final claim and remanded it back to state court.  On appeal, the Fourth Circuit held that

the remanded claim was a federal claim that should have been dismissed on the merits.

On remand from the Fourth Circuit, the federal district court entered summary judgment

for BellSouth.  BellSouth then attempted to have the state court action dismissed based

on the res judicata effect of the federal district court dismissal, but the state court denied

BellSouth's motion.  BellSouth went back to the federal district court and received an

injunction of the state-court action, which Bryan appealed to the Fourth Circuit, claiming

that the injunction violated the Anti-Injunction Act.

The Fourth Circuit found that the district court had jurisdiction to enforce its own

judgments through an injunction, as long as the court's original jurisdiction was proper,

reasoning as follows:

> The All Writs Act provides that a court "may issue all writs necessary or
> appropriate in aid of their respective jurisdictions and agreeable to the
> usages and principles of law."  Use of the All Writs Act, however, is
> constrained by the Anti-Injunction Act, which provides that "[a] court of
> the United States may not grant an injunction to stay proceedings in a
> State court except as expressly authorized by Act of Congress, or where
> necessary in aid of its jurisdiction, or to protect or effectuate its
> judgments." . . .  "The relitigation exception was designed to permit a
> federal court to prevent state litigation of an issue that previously was
> presented to and decided by the federal court.  It is founded in the well-
> recognized concepts of res judicata and collateral estoppel."

*Id.* at 236 (citations omitted). *See Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1013 (8th

Cir. 2002) ("[a]s long as the original lawsuit was properly brought in federal court, the

federal court retains subject matter jurisdiction to remove any subsequent state law action

to federal court for purposes of applying the All Writs Act"); *Regions Bank of La. v.

Rivet*, 224 F.3d 483, 493 (5th Cir. 2000) (noting that jurisdiction under the All Writs Act

is based on the original case);  *In re Gen. Motors Corp.*, 134 F.3d at 143 ("[i]f an

injunction falls within one of [the exceptions to the Anti-Injunction Act], the All-Writs

Act provides the positive authority for federal courts to issue injunctions of state court

proceedings").

Since Bryan's claim in state court was "functionally identical" to the federal

claim, the Fourth Circuit found that the relitigation exception to the Anti-Injunction Act

had been met.  However, the Court noted that even if the exception was met, an

injunction enjoining state proceedings might not be proper.  The Fourth Circuit stated that

where a state court has entered a final order rejecting the claim that a prior federal order

be given res judicata effect, the Full Faith and Credit Act requires the federal court to

respect the state court order and refuse to enjoin the state proceedings. *Id.* at 239.  Hence,

the lower court must decide whether the state court order is entitled to res judicata effect

under that state's law.  The Fourth Circuit found that under North Carolina law the state

court order denying BellSouth's motion was not a final order, not entitled to res judicata

effect, and therefore the federal court was not barred from issuance of an injunction to

protect its own judgment. *Id.*

Thus, the All Writs Act is the proper mechanism for Lexington to seek an

injunction under the relitigation exception of the Anti-Injunction Act, in order to prevent

the nullification of the previous judgment properly entered by this Court.

### C.   Class Plaintiffs' Action is Barred By Res Judicata, Collateral Estoppel and Equitable Estoppel

#### 1.   Res Judicata

This Court should grant Lexington's Motion for Permanent Injunction, because

Class Plaintiffs' claims are barred by res judicata and collateral estoppel based on the

final order entered by this Court, as well as equitable estoppel.

The determination of the preclusive effect of a prior federal judgment is

controlled by federal law. *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir. 1990).  Under

res judicata, or claim preclusion, "once a matter-whether a claim, an issue, or a fact-has

been determined by a court as the basis for a judgment, a party against whom the claim,

issue, or fact was resolved cannot relitigate the matter." *In re Microsoft Corp. Antitrust

Litig.*, 355 F.3d 322, 325 (4th Cir. 2004).  S*ee also United States v. Tatum*, 943 F.2d 370,

381 (4th Cir. 1991).[3]   "[I]f the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). S*ee also Tatum*, 943 F.2d at 381.  Two causes of action are sufficiently the same when the second claim "arise[s] out of the same transaction or series of transactions, or the same core of operative facts." *In re Varat*, 81 F.3d at 1316 (citations omitted); *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir. 1990).

The essential elements of res judicata are "'(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits.'" *Keith*, 900 F.2d at 739 (quoting *Nash City Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)). S*ee also Varat*, 81 F.3d at 1315.  A judgment is final when it "'ends the litigation on the merits and leaves nothing for the [district] court to do but execute the judgment.'" *Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005) (quoting *Caitlin v. United States*, 324 U.S. 229 (1945)).  Once a court of competent jurisdiction has reached a valid final judgment, it has binding effect on the parties in all other courts, federal and state. *See Gannett Co. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 746 (4th Cir. 2002).

All requirements of res judicata are met here.  This Court's entry of the agreed judgment order constituted a final judgment on the merits.  The order enshrined all of the issues relating to Thrasher's insurance coverage under Lexington's policy.  It makes no difference that the judgment with the preclusive effect was rendered in a federal court while the action to be enjoined is pending in state court. *See Gannett*, 286 F.3d at 746.

---

[3]   Res judicata is based on two policy considerations: judicial efficiency and finality. *In re Microsoft*, 355 F.3d at 325.

The causes of action in both courts are identical.  Both deal with a declaration of insurance coverage of Thrasher under Lexington's policy for certain claims arising out of the construction of a sanitary sewer system in Marion County, West Virginia.  *See* Am. Compl., ¶ 126; Arbitration Award, p. 1.  Finally, the parties subject to the order are the same, because privity was present and the agreed judgment order expressly applied to Class Plaintiffs for the reasons laid out by the Award of Arbitrator, summarized above.

In *Martin v. American Bancorporation Retirement Plan*, 407 F.3d 643 (4th Cir. 2005) (quoting *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997)), the Fourth Circuit stated that "[t]o be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'" In addition, the Fourth Circuit has recognized that non-parties will be considered in privity with a party to a prior action for res judicata effect when the non-party's interests are "adequately represented by a party to the original action." *Id.*

The state court's holding that no privity existed between the parties was wrong. The state court held that even though Class Plaintiffs' interest in the insurance policy was derivative of Thrasher's interest and rights, Class Plaintiffs' interests were not adequately represented in the arbitration and they were not in privity with Thrasher because their interests "significantly diverged" from Thrasher's.  *See* Am. Order, p. 11.  However, Class Plaintiffs' interests are "precisely the same legal right" in respect to the coverage issue as Thrasher's.  Class Plaintiffs' interests are entirely derivative of Thrasher's rights; Class Plaintiffs are seeking a determination of Thrasher's right to coverage, not their own; and it was Thrasher's right to coverage which was determined by the arbitrators and

announced by order of this Court.   Thrasher clearly was in a better position and had a

more vested and compelling interest in zealously pursuing insurance coverage available

to it for this claim because Thrasher had bargained for the policy coverage.

The arbitrators determined, and this Court agreed, that since Class Plaintiffs'

rights against Lexington derive from their claims against Thrasher, Class Plaintiffs could

have no greater or lesser rights than those enjoyed by Thrasher.   Further, the arbitrators

determined and this Court agreed that since Class Plaintiffs have to stand in the shoes of

Thrasher and Thrasher is bound by the arbitration clause in its policy and the arbitration

award, Class Plaintiffs are just as bound.

### 2.   Collateral Estoppel

Even if this Court determines that Class Plaintiffs are in fact asserting a different

claim in state court or that privity was lacking to establish res judicata, Class Plaintiffs'

claim must still be dismissed pursuant to the doctrine of collateral estoppel, because the

issues essential to it have already been determined by this Court.   While res judicata

prevents a party from bringing a subsequent action based on the same claim as litigated in

the previous action, collateral estoppel precludes the subsequent adjudication of a

previously determined issue, even if the subsequent action is based on an entirely

different claim.   *See Vera*, 81 F.3d at 1315.   Collateral estoppel "precludes relitigation of

an issue decided previously in judicial or administrative proceedings provided the party

against whom the prior decision was asserted enjoyed a full and fair opportunity to

litigate that issue in an earlier proceeding."[4]  *In re McNallen*, 62 F.3d 619, 624 (4th Cir.

1995).

> Collateral estoppel applies if the following are met:
>
> (1) [T]he issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft*, 355 F.3d at 326.

All the requirements for collateral estoppel are met in this action. The issues are

the same in both actions, namely, whether Lexington's insurance policy covers the claims

asserted by Class Plaintiffs against Thrasher. These issues have already been decided by

this Court. The issues were material and necessary to the final disposition of the prior

action that resolved the coverage issue. This Court's decision was final and valid. Class

Plaintiffs were invited to participate in the arbitration. Contrary to the state court's

finding, this was a full and fair opportunity available to Class Plaintiffs, which they

expressly declined. Therefore, the Class Plaintiffs' claim before the state court against

Lexington, even if deemed different from the claim adjudicated by this Court, consists of

issues previously litigated and determined by a court of competent jurisdiction. Class

Plaintiffs are collaterally estopped from relitigating those issues, and the determination of

such issues against them requires that their state court claim be enjoined.

Similarly, in *Vines v. University of Louisiana,* 398 F.3d 700 (5th Cir. 2005), a

party in much the same circumstances as Lexington is here brought a motion for

---

[4] The purpose of collateral estoppel is to "avoid[] duplicative relitigation of identical issues [and] ensure[] that parties will eschew the piecemeal presentation of their case." *Combs v. Richardson*, 838 F.2d 112, 114 (4th Cir. 1988).

permanent injunction in federal district court pursuant to the All Writs Act and Anti-Injunction Act in order to preclude the state court from proceeding on claims on which the party had been granted summary judgment in federal court.  Reversing the district court's denial of the motion, the Fifth Circuit granted the injunction.

In *Vines*, two retired faculty members at the University of Louisiana-Monroe ("ULM") were subsequently rehired on a year-to-year basis, so that they were receiving an annual salary in addition to their retirement benefits.  *Id.* at 703.  ULM then adopted a policy prohibiting the full-time reemployment of retirees and did not rehire plaintiffs for the upcoming school year.  *Id.*  Plaintiffs filed suit against ULM in Louisiana state court, asserting federal and state employment discrimination claims.  *Id.*  ULM removed the case to federal court pursuant to federal question jurisdiction, where it was consolidated with an Equal Employment Opportunity Commission ("EEOC") action brought on plaintiffs' behalf asserting employment discrimination claims under federal law.  The district court subsequently held that it lacked jurisdiction over plaintiffs' federal claims, remanded the state claims to state court, and granted ULM summary judgment on the EEOC's federal claims.  *Id.* at 703-04.

Following the district court's entry of summary judgment, ULM moved in state court to dismiss plaintiffs' remanded state law claims under res judicata and collateral estoppel, asserting that the same claims and issues had been decided adversely to plaintiffs in the federal action.  *Id.* at 704.  The trial court agreed and dismissed the state action.  *Id.*  The circuit court of appeal, however, reversed, finding no privity between plaintiffs and the EEOC.  *Id.*  After the Louisiana Supreme Court denied certiorari, ULM filed a motion in federal court pursuant to the relitigation exception to enjoin the state

court lawsuit based on the federal court's decision in favor of ULM in the EEOC action. *Id.*

In reversing the district court's denial of ULM's motion, the Fifth Circuit held that the action fell within the relitigation exception to the Anti-Injunction Act.  The court recognized that the relitigation exception was "'designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court.  It is founded in the well-recognized concepts of res judicata and collateral estoppel.'"  *Id.* (quoting *Chick Kam Choo*, 486 U.S. at 147).  Finding that plaintiffs were collaterally estopped from asserting their state law claims based on the federal court's ruling on the EEOC action, the Fifth Circuit ordered that the state court proceedings be enjoined.  *Id.* at 706-11.

In this case, Lexington has convincingly demonstrated that the West Virginia proceedings—involving the same issues and parties in privity as the federal action—are barred by res judicata and collateral estoppel.   Therefore, as in *Vines*, Lexington is entitled to an injunction of the state court proceedings under the relitigation exception to the Anti-Injunction Act.

### 3.    **Equitable Estoppel**

Further pursuit of this action is barred not only under principles of res judicata and collateral estoppel, but also as a matter of equity.

> In the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's binding arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411, 418 (4th Cir. 2000).

Class Plaintiffs were provided with an opportunity to litigate their claim in the alternative arbitration forum, but elected not to do so. Class Plaintiffs' attempt to gain a direct benefit under the insurance policy, while simultaneously avoiding its burdens, should be equitably estopped. *Id. See e.g., State ex rel. United Asphalt Suppliers, Inc. v. Sanders*, 204 W. Va. 23, 511 S.E.2d 134 (1998).

### D.    Comity Not Violated Because State Action Lacks Jurisdiction and Not Entitled To Full Faith and Credit

This Court's grant of an injunction will not usurp the state court's legitimate authority to decide this matter and will not disturb the on-going state proceeding. The injunction requested from this Court deals only with the question of Lexington's coverage. The state court's orders denying Lexington's original and successive motions for summary judgment are not entitled to Full Faith and Credit because they are not final judgments. In addition, comity is not disturbed, because the state court never had the authority to decide the matter of Lexington's coverage in the first place due to the federal judgment.

As discussed above, the purpose of the Anti-Injunction Act is to prevent federal courts from enjoining state court proceedings. The Act's allowance for three narrow exceptions, however, offsets some of the tension between the Act and

> the unqualified terms in which Congress, pursuant to constitutional authorization, has conferred specific categories of jurisdiction upon the federal courts, and with the principle that "[w]hen a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction."

*England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 415 (1964) (quoting *Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40 (1909)).  S*ee also County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959) (stating that abstention doctrine "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it"); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting the general rule that federal courts are bound by a "virtually unflagging obligation . . . to exercise the jurisdiction given them").   The obligation to exercise ancillary jurisdiction may not rise to the level of other jurisdictions granted to district courts.   Still, a substantial duty exists, especially where exercise of jurisdiction enables a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees, which is the case here.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994).

A permanent injunction would not usurp the state court's legitimate authority to proceed on the state law claims, nor would it violate principles of comity and the Anti-Injunction Act.   In *Younger v. Harris*, the Supreme Court explained that comity was a "vital" policy concern underpinning the prohibitions of the Anti-Injunction Act.   401 U.S. 37, 44 (1971).  The Court elaborated on the notion of comity as:

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways . . . . What the concept [represents] is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.*

Comity concerns for the activities of the state, however, are significantly lessened by the court's determination that those activities are null and without effect. *See In re James*, 940 F.2d 46, 52 (3rd Cir. 1991) ("vacating [a void] judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests"). S*ee also Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987) (holding the state court judgment void after determining that the jurisdictional basis of the sate court action was lacking). In this action, injunctive relief avoids offending notions of comity and federalism, while fulfilling the court's obligation to exercise its jurisdiction, vindicate its authority, and protect its judgments, because the state court could not exercise jurisdiction as it was precluded by this Court's prior determination.

Furthermore, while the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give state court judgments the same preclusive effect the judgments would have in another court of the same state, *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 525 (1986), no such preclusive effect attaches to state court judgments which are not final. In *Bryan v. BellSouth Communications, Inc.*, 492 F.3d 231, 239-40 (4th Cir. 2007), the court noted that "the Anti-Injunction Act does not create an exception to the requirements of the Full Faith and Credit Act." (citing *Parsons*, 474 U.S. at 524).

In this case, just as in *BellSouth*, the state court has rejected a res judicata claim by denying a motion to dismiss. Given the state court decision in *BellSouth*, the Fourth Circuit reasoned that, pursuant to *Parsons*, the appropriate analysis is to see if the state court's decision is itself entitled to res judicata effect under state law. *Id.* at 240. Under West Virginia law, an order is a final judgment if it "ends the litigation on the merits and leaves nothing for the circuit court to do but execute the judgment." *Province v.*

*Province*, 196 W. Va. 473, 478, 473 S.E.2d 894, 899 (1996). Because the state court's denial of Lexington's motions is not a judgment on the merits of the case, it is not a final judgment under West Virginia law. *See Walker v. Option One Mortg. Corp.*, 220 W.Va. 660, 649 S.E.2d 233 (2007). "[R]es judicata does not arise until there is a judgment on the merits." *Shelby J.S. v. George L.H.*, 181 W. Va. 154, 155, 381 S.E.2d 269, 270 (1989). The state court's order denying Lexington's motions did not dispose of the merits of the case, which remain pending in the circuit court. Indeed, nothing prevents Lexington from raising, and the state court from revisiting, the res judicata and collateral estoppel issues themselves in a subsequent successive summary judgment motion.

A state court judgment, even if final, is not entitled to preclusive effect in federal court if in fact the state court lacked authority to hear the case. *See Regions Bank of La. v. Rivet*, 224 F.3d 483, 495 (5th Cir. 2000). "Even as to prior determinations from state courts, the Supreme Court has long recognized that no preclusive effect will attach where the court was without subject matter jurisdiction over the controversy." *Love v. United States*, 889 F. Supp. 1548, 1561 (E.D.N.C. 1994). Such is the situation here.

The state court's order is not a final judgment, is not entitled to preclusive effect under Full Faith and Credit, and does not prevent this Court from enjoining the state court proceedings. Ironically in this case, it is the state court which is in fact usurping this Court's authority.

## IV.   CONCLUSION

For the foregoing reasons, Lexington's Motion for Permanent Injunction should be granted to protect this Court's final judgment and to protect Lexington from an inconsistent judgment in state court.

Respectfully submitted, this 14th day of December, 2007.

STEPTOE & JOHNSON PLLC
Of Counsel

/s/ William D. Wilmoth /ss/ Amy M. Smith
William D. Wilmoth (W. Va. Bar No. 4075)
P. O. Box 751
Wheeling, WV 26003-0751
(304) 233-0000

STEPTOE & JOHNSON PLLC
Of Counsel

Amy M. Smith (W. Va. Bar No. 6454)
Chase Tower, Sixth Floor
Post Office Box 2190
Clarksburg, W. Va. 26302-2190
(304) 624-8000

STEPTOE & JOHNSON PLLC
Of Counsel

Laurie C. Barbe (W. Va. Bar No. 5504)
United Center, Suite 400
1085 Van Voorhis Road
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000

Counsel for Lexington Insurance
Company