IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LEXINGTON INSURANCE COMPANY,

       Plaintiff,

v.                                       Civil Action No. 1:06CV21
                                                                     (STAMP)
THRASHER ENGINEERING, INC.,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY**
**AND DENYING PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**

## I.  Procedural History

On February 8, 2006, the plaintiff, Lexington Insurance Company ("Lexington"), filed a single-count complaint in this Court against the defendant, Thrasher Engineering, Inc. ("Thrasher"), seeking an order confirming an arbitration award in favor of Lexington against Thrasher. Specifically, the complaint requested that "[a] judgment of this Court be entered confirming the Award of Arbitrator as between plaintiff Lexington Insurance Company and defendant Thrasher Engineering, Inc." (Pl.'s Compl. 4.) On February 16, 2006, Thrasher filed an answer admitting the allegations in Lexington's complaint and stating that it was "unaware of any reasonable, legitimate basis upon which it may rely to resist the relief sought by plaintiff." (Def.'s Answer 2.) On February 22, 2006, the parties submitted a proposed agreed judgment order confirming and incorporating by reference the award of the

arbitrator. There being no objection raised by any other person, the Court entered the agreed judgment order on February 27, 2006.

Earlier this year, Lexington filed a motion for a permanent injunction requesting an order by this Court permanently enjoining class plaintiffs in a related state court action, styled <u>Brummage v. Thrasher Engineering, Inc.</u>, Consolidated Civil Action No. 03-C-221, proceeding in the Circuit Court of Marion County, West Virginia, from pursuing, either individually and/or acting as a representative of a class, against Lexington the claims previously dismissed with prejudice by this Court or from otherwise prosecuting their claims of insurance coverage in the West Virginia state courts. Thrasher filed no response to this motion. However, the class plaintiffs in the related state case ("the class plaintiffs") appeared specially in this action for the sole purpose of opposing the motion on the grounds that they are not bound by this Court's judgment because they were not parties to the arbitration award at issue, nor are they parties to this action. This Court, following the class plaintiffs' special appearance, requested that they join the named parties in stating their position with respect to the motion.

This Court received and reviewed extensive briefing on Lexington's and the class plaintiffs' respective positions. On June 19, 2008, this Court held a hearing on Lexington's motion, at which the class plaintiffs appeared specially by counsel, Lexington

2

appeared in person by counsel, and Thrasher appeared telephonically by counsel. At that hearing, this Court sua sponte raised the issue of whether a recent decision by the United States Supreme Court, Taylor v. Sturgell, 128 S. Ct. 2161, 2172-73 (2008), had any effect on the matter before this Court. This Court requested supplemental briefing on the issues raised in Taylor. Lexington and the class plaintiffs filed supplemental memoranda. Lexington then filed a motion for leave to file a reply memorandum, which the class plaintiffs have opposed. Thrasher has not submitted any filings relating to Lexington's motion for a permanent injunction. This Court believes that Lexington's motion for leave to file a reply to the class plaintiffs' supplemental memorandum should be granted. Moreover, after considering the submitted filings and the relevant law, this Court concludes that Lexington's motion for a permanent injunction must be denied.

## II. Facts

The dispute giving rise to the related state court action concerns the failure of a vacuum sewer and storm water collection system designed by Thrasher. The class plaintiffs initiated an action against Thrasher in 2004 in the Circuit Court of Marion County, West Virginia. At that time, Lexington was not named as a defendant.

In January 2005, the state court parties reached a settlement agreement, which was announced to the state court judge, limiting

Thrasher's exposure to the amount provided in its insurance coverage. The class plaintiffs subsequently filed an amended complaint adding Lexington and seeking a court judgment declaring that an excess professional liability insurance policy issued by Lexington covered Thrasher for damages associated with the failure of the sewer system.

On May 9, 2005, pursuant to a binding arbitration clause in Lexington's policy, Lexington served the class plaintiffs and Thrasher with a demand for arbitration. On the same day, Lexington filed in the state action a motion to dismiss in favor of binding arbitration, or, alternatively, to stay the declaratory judgment action. Lexington and Thrasher proceeded with arbitration before the state court decided Lexington's motion. The class plaintiffs, objecting on jurisdictional grounds, affirmatively declined to participate in the arbitration proceedings.

Meanwhile, in August 2005, the state court held a hearing on the settlement agreement limiting Thrasher's liability to the amount of its insurance coverage, of which the class plaintiffs and Thrasher had previously informed the state court in January 2005. Thereafter, Lexington and Thrasher each submitted to the arbitration panel memoranda in support of an arbitration award deciding the issue of whether Lexington's policy covered Thrasher for the damages at issue in the pending state court action. Lexington argued that there was no coverage, and Thrasher did not

4

contend otherwise. Lexington and Thrasher also provided the arbitration panel with copies of the briefs the class plaintiffs had submitted to the state court in support of the class plaintiffs' contention that the Lexington policy covered the damages asserted in the class plaintiffs' claims against Thrasher.

In January 2006, the arbitration panel issued an award in favor of Lexington. The panel found that Thrasher knew about the circumstances giving rise to the class plaintiffs' claims before the effective date of the Lexington policy. The panel concluded that Thrasher's notice of the claims actuated an exclusion to the policy, and that therefore, the policy did not cover the class plaintiffs' claims.

The panel, which, of course, did not have the benefit of the United States Supreme Court's decision in Taylor v. Sturgell, 128 S. Ct. 2161 (2008), also concluded that it had jurisdiction over the class plaintiffs; that their claims were derivative of Thrasher's rights under the policy issued by Lexington; and that they were bound by the award of arbitration "to the same extent as if they had appeared and fully participated." (Award of Arbitrator 7.) On February 27, 2006, as previously noted, this Court entered an agreed judgment against Thrasher confirming and incorporating the arbitrator's decision.

On February 9, 2007, in an order denying a motion by Lexington for summary judgment, the state court held that the class

5

plaintiffs were not bound by this Court's judgment because they lacked privity and did not have a full and fair opportunity to litigate their claims. (Order of State Ct. Feb. 9, 2007.) On November 15, 2007, in a decision denying a successive motion for summary judgment by Lexington and granting the class plaintiffs' motion for summary judgment, the state court found that Lexington was estopped from denying coverage under Thrasher's policy. (Order of State Ct. Nov. 15, 2007.)

This action followed. At issue is whether the class plaintiffs are bound by this Court's agreed judgment confirming the award of arbitration in favor of Lexington against Thrasher. Lexington argues that the class plaintiffs are so bound. The class plaintiffs contend that they are not. Thrasher takes no position.

### III. Applicable Law

A. Injunctive Relief

As a preliminary matter, this Court has jurisdiction to adjudicate Lexington's motion for a permanent injunction under the All Writs Act, 28 U.S.C. § 1651, the relitigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283, and the continued jurisdiction this Court has to enforce the judgment it entered in the proper exercise of original jurisdiction pursuant to 28 U.S.C. § 1332(a) in the original action between Lexington and Thrasher. See Bryan v. Bellsouth Communications, 492 F.3d 231, 236-37 (4th

Cir. 2007); Marino v. Pioneer Edsel Sales, Inc., 349 F.3d 746, 752 (4th Cir. 2003).

The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This authority extends to the issuance of an injunction to prevent "parties before [a federal court] from attempting to relitigate decided issues and to prevent collateral attack of its judgments." In re March, 988 F.2d 498, 500 (4th Cir. 1993).

However, the Anti-Injunction Act bars federal courts from granting an injunction to stay state court proceedings unless at least one of three exceptions applies: (1) Congress has expressly conferred the power to enjoin state court proceedings; (2) an injunction is "necessary in aid of [the federal court's] jurisdiction;" or (3) an injunction will "protect or effectuate [the federal court's] judgments." 28 U.S.C. § 2283. The third exception, known as the relitigation exception, permits a federal court "to enjoin state court proceedings in order to protect the res judicata effects of federal judgments." Nationwide Mut. Ins. Co. v. Burke, 897 F.2d 734, 737 (4th Cir. 1990) ("Nationwide"). An injunction issued pursuant to the authority granted by the All Writs Act need not be analyzed under the four-factor balancing test set forth in Blackwelder Furniture Co. v. Seilig Manufacturing Co.,

Inc., 550 F.2d 189 (4th Cir. 1977), which is ordinarily applicable to preliminary injunctions. See Scardelletti v. Rinckwitz, 68 Fed. Appx. 472, 477 n.3 (4th Cir. 2003) (unpub.). Rather, an injunction issued under the All Writs Act must comport with the dictates of Federal Rule of Civil Procedure 65. Scardelletti v. Debarr, 265 F.3d 195, 212 (4th Cir. 2001), rev'd on other grounds by Devlin v. Scardelletti, 536 U.S. 1 (2002). However, even if this Court were to analyze this action under the Blackwelder factors, the result would be the same.

B.   Nonparty Claim and Issue Preclusion

The relitigation exception applies to federal judgments which have claim-preclusive effect under the doctrine of res judicata and those which have issue-preclusive effect under the doctrine of collateral estoppel. Nationwide, 897 F.2d at 737. Claim preclusion bars "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748 (2001). Issue preclusion forecloses "successive litigation of an issue or fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." Id. at 748-49.

Generally, a person who was not a party to the prior litigation, and who, therefore, did not have a full and fair opportunity to litigate the claims and issues resolved in that

litigation, is not subject to the rules of claim- or issue-preclusion. Hansberry v. Lee, 311 U.S. 32, 40 (1940); Richards v. Jefferson County, 517 U.S. 793, 798 (1996).

However, the United States Supreme Court, in a decision which rejected the doctrine of nonparty preclusion by "virtual representation," has recently catalogued six categories of exceptions to the rule against nonparty preclusion. Taylor v. Sturgell, 128 S. Ct. 2161, 2172-73 (2008). These exceptions include the following situations: (1) where a person has agreed to be bound by the resolution of issues in an action between others; (2) where "pre-existing 'substantive legal relationship[s]' exist between the person to be bound and the party to the judgment," such as the relationships between "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor;" (3) where a nonparty was "'adequately represented by someone with the same interests who [wa]s a party' to the suit," such as class representatives in "properly conducted class actions, . . . trustees, guardians, and other fiduciaries"; (4) where a nonparty assumed control over the prior litigation; (5) where a nonparty acts as a proxy for a person who was a party to the prior adjudication; and (6) where a "special statutory scheme . . . 'expressly foreclos[es] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process,'" such as "bankruptcy and probate proceedings, and quo warranto actions or

9

other suits" which may be prosecuted only on behalf of the public at large." Id.

IV. Discussion

The question before this Court is whether the rules of nonparty preclusion operate to bind the class plaintiffs to this Court's judgment such that this Court should issue an order enjoining litigation of the issue of Lexington's liability to Thrasher in the state court proceedings. This Court finds that they do not.

Whether a federal court judgment has preclusive effect is determined by federal common law. See Semtek Int'l. v. Lockheed Martin Corp., 531 U.S. 497, 507-08 (2001). "For judgments in diversity cases, federal common law incorporates the rules of preclusion applied by the State in which the rendering court sits." Id. For judgments in federal-question cases, the "'uniform federal rule[s]'" of preclusion are those developed by the federal courts, with the United States Supreme Court exercising "ultimate authority to determine and declare" such rules. Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008) (quoting Semtek, 531 U.S. at 508 (2001)). Lexington brought suit against Thrasher pursuant to this Court's diversity jurisdiction. Therefore, West Virginia's preclusion rules apply.

Under West Virginia's formulation of claim preclusion, or res judicata, three elements must be present before a lawsuit may be

foreclosed on that basis. Blake v. Charleston Area Med. Ctr., Inc., 498 S.E.2d 41, Syl. Pt. 4 (W. Va. 1997).

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it be presented, in the prior action.

Id.

Similarly, the doctrine of issue preclusion, or collateral estoppel, bars litigation of a disputed issue where four factors are present:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

State v. Miller, 459 S.E.2d 114, Syl. Pt. 1 (W. Va. 1995).

Lexington argues that the West Virginia preclusion rules should be applied to this case without reference to the principles set forth by the United States Supreme Court in Taylor. Lexington claims that because federal court jurisdiction in Taylor was based upon a federal question, Taylor is inapplicable to cases, such as this one, which are predicated upon diversity of citizenship. Lexington cites Gribbon v. Kirk, 466 S.E.2d 147, 157 n.21 (W. Va. 1995), as support that the West Virginia Supreme Court of Appeals

11

has previously recognized the doctrine of virtual representation under West Virginia law, which the United States Supreme Court rejected in Taylor. However, merely because West Virginia recognizes the doctrine of virtual representation does not mean that it would necessarily be applied in this action. Furthermore, Lexington cites no authority, and this Court has found none, to support any implication that the West Virginia Supreme Court of Appeals would not be guided by the United States Supreme Court's rejection of that doctrine or by the exceptions to nonparty preclusion that Taylor identified. To the contrary, this Court believes that in applying West Virginia's rules of preclusion to a nonparty, the West Virginia Supreme Court of Appeals would be guided by the principles set forth in Taylor. See Conley v. Spillers, 301 S.E.2d 216 (W. Va. 1983) (relying upon federal case law in developing state collateral estoppel rules). Accordingly, this Court believes that analysis of nonparty preclusion under Taylor is appropriate in this action.

None of the exceptions identified in Taylor operates to apply nonparty preclusion to the class plaintiffs' claims against Thrasher in the state court proceedings at issue in this action. Lexington does not contend, and this Court does not find, that the class plaintiffs have agreed to be bound by the determination of issues in this action between Lexington and Thrasher; that the class plaintiffs have assumed control over this litigation; that

the class plaintiffs are acting as the designated representative of a person who was a party to this litigation; or that any statutory exception applies to foreclose the class plaintiffs' claims in state court. Therefore, only two potential exceptions remain.

The first is the exception based upon a pre-existing substantive legal relationship between the person to be bound and a party to the judgment. Lexington contends that the class plaintiffs' rights are derivative of Thrasher's and, therefore, a qualifying pre-existing substantive legal relationship exists between the class plaintiffs and Thrasher. This argument fails. The types of qualifying relationships identified by the United States Supreme Court in Taylor include "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." Taylor, 128 S. Ct. at 2172. The Taylor Court pointedly observed that "[t]hese exceptions originated 'as much from the needs of property law as from the values of preclusion by judgment.'" Id. (quoting 18A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4448, p. 329 (2d ed. 2002). Although the Taylor Court stated that its list of qualifying relationships was not exhaustive, derivative relationships to insurance contracts of the type at issue in this action do not appear be what that Court contemplated when it identified the pre-existing legal relationship exception to the rule against nonparty preclusion. See id.

13

The second potentially applicable exception is the adequate representation exception. However, even though Lexington appeared in its initial pleadings to advance the argument that Thrasher adequately represented the class plaintiffs' interests in the arbitration, Lexington appears to have abandoned that position in its subsequent filings with this Court. Insofar as Lexington may continue to rely on that ground, this Court rejects it.

Preclusion cannot be justified on the theory that the class plaintiffs were adequately represented by a party to the arbitration or to the action before this Court for two broad reasons. First, nothing in the record can be construed as evidence that Thrasher has at any time attempted to represent, or has considered itself to be representing, the class plaintiffs' interests. To the contrary, Thrasher's interests appear to this Court to be in direct conflict with those of the class plaintiffs. The class plaintiffs allege that coverage exists under the insurance policy issued to Thrasher, whereas Thrasher and Lexington represented to the arbitrator their belief that Thrasher was not covered. In fact, the arbitration award stated:

> The question presented to this Panel for resolution is unusual in that it appears that both Lexington and Thrasher . . . agree that Lexington does not owe coverage for the class plaintiffs' claims. While the absence of any controversy might suggest that this dispute is moot, we have nonetheless made an independent assessment of the parties' claims and the available insurance to determine whether, in fact, Lexington does owe any duties with respect to these claims.

14

(Award of Arbitrator 7.)

Thrasher's answer to Lexington's complaint represented to this Court that Thrasher had no reasonable or legitimate basis for resisting Lexington's request to enforce the arbitration award. Furthermore, the record indicates that the claims against Thrasher in state court have been settled, limiting Thrasher's liability to the amount of insurance coverage. Therefore, even if Thrasher has no coverage under the Lexington policy, Thrasher is still not liable. It has no incentive to argue in favor of coverage. In the absence of any dispute over coverage between Thrasher and Lexington, this Court cannot fairly conclude that the class plaintiffs' interests were adequately represented in the arbitration proceedings.

The second reason to reject application of the adequate representation exception is that it appears to encompass a particular type of representative relationship not present between Thrasher and the class plaintiffs. In Taylor, the Court stated that the adequate representation exception applies "'in certain limited circumstances'" and specifically mentions class action representatives and representatives with fiduciary duties to the nonparty. Taylor, 128 S. Ct. at 2172 (quoting Richards v. Jefferson County, 517 U.S. 793, 798 (1996)). No such representative relationship exists between Thrasher and the class plaintiffs.

15

Finally, Lexington urges this Court to find that the class plaintiffs are bound this Court's judgment on the basis of privity with Thrasher under West Virginia law and that the exceptions to the rule against nonparty preclusion identified in Taylor are extraneous to the matters before this Court. Although this Court believes that the opposite is true, to the extent that it might be necessary to consider privity under West Virginia law, this Court finds that no privity exists between the class plaintiffs and Thrasher.

The West Virginia Supreme Court of Appeals has stated that "something more is required for privity between the prior and present litigants than a common interest." Gribben v. Kirk, 466 S.E.2d 147, 157 n.21 (W. Va. 1995). However, a common interest between Thrasher and the class plaintiffs is essentially all that Lexington asserts. If Lexington's policy covers Thrasher for the class plaintiffs' claims, Lexington argues, then the class plaintiffs enjoy derivative benefits. According to Lexington, these derivative benefits create a common interest shared by the class plaintiffs and Thrasher. Even if Thrasher and the class plaintiffs shared the position that the Lexington policy covers the claims brought against Thrasher in state court, the class plaintiffs' derivative benefits would constitute nothing more than a common interest, which without more, does not create privity. See Gribben, 466 S.E.2d at 157 n.21. However, in this case, not

16

even a common interest is present. As discussed above, Thrasher and Lexington admitted to the arbitration panel that they agreed the Lexington policy provided no coverage for the class plaintiffs' claims against Thrasher. In light of the settlement agreement limiting Thrasher's exposure to the amount of insurance coverage and the class plaintiffs' position that there is coverage under the Lexington policy, Thrasher's interests are diametrically opposed to those of the class plaintiffs. Therefore, this Court finds that no privity exists between the class plaintiffs and Thrasher. This conclusion comports with the finding of the state court as set forth in that court's order denying Lexington's motion for summary judgment. (Order of State Ct. Feb. 9, 2007.)

This Court recognizes the arbitration panel's finding that the class plaintiffs were subject to its decision. However, the panel seems to have based its decision in part upon State, ex rel. United Asphalt Supplies, Inc. v. Sanders, 511 S.E.2d 134 (W. Va. 1998). There, the West Virginia Supreme Court of Appeals recognized that nonsignatories to an arbitration clause may, in some cases, be compelled to pursue their claims against a defendant in arbitration based upon the doctrine of equitable estoppel. Id. at 138. However, that case reaffirmed the well-established rule that "only parties who have actually signed an agreement containing an arbitration clause can be forced to arbitrate their claims." Id. at 138. In that case, the court found that the nonsignatory was

not required to participate in the arbitration proceedings because the record provided insufficient evidence to support a conclusion that the nonsignatory had "identity of [ownership] interests" with the signatory.  Id.  In addition, this Court observes that the arbitration panel reached its decision before the United States Supreme Court issued Taylor.  Therefore, the panel did not have the benefit of that Court's guidance concerning adequacy of representation.  Further, to the extent that the arbitration panel and Lexington believe that the class plaintiffs should be bound because the class plaintiffs had an opportunity to participate in the arbitration proceedings but declined to do so, this Court finds no fault with the class plaintiffs' affirmative decision not to participate in the arbitration, given their properly raised objections on jurisdictional grounds.  Accordingly, for the reasons articulated in the foregoing discussion, Lexington's motion for a permanent injunction must be denied.

## V.  Conclusion

Based upon the reasons set forth above, Lexington Insurance Company's motion for a permanent injunction is DENIED.  Further, Lexington Insurance Company's motion for leave to file a reply to the class plaintiffs' supplemental memorandum is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal

Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: September 30, 2008

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE